The next case is United States v. Batiz. Good morning, Your Honors. Devin McLaughlin for Defendant Appellant Mr. Batiz. As you know, we are arguing that Mr. Batiz's supervised release revocation sentence was substantively unreasonable. My hope is that this Court would agree that a sentence seven times longer than the top end of the guideline range would at least be given serious consideration in terms of whether it's substantively unreasonable. The question obviously in this case is whether that's how the Court is going to view Mr. Batiz's sentence. From our perspective, under the real-world impact of Mr. Batiz's sentence and based on the state of the record presented below, that the judge's decision to run the 10-month sentence concurrent to the state sentence, sorry, consecutive to the state sentence, transformed it into a 68-month sentence seven times greater than the top end of the guideline. You're not arguing that the District Court wasn't aware of this factor? I mean, it was argued and the District Court considered it? So it was certainly presented to the Court and the Court understood it had the discretion to go concurrent versus consecutive. He did not articulate in deciding and announcing to go consecutive any specific consideration of this additional impact due to the consecutive nature of it. Looking back at the transcript of it, he made some ambiguous comments earlier in terms of his justifications for his sentence. But the record nowhere contains a statement that, yes, I recognize this is going to add an additional time and make you ineligible for release from state custody because of the consecutive nature and the federal detainer. The math is pretty easy, and to his credit— What are we to— Sorry, you are. No, I'm sorry. I just was going to ask, what are we to make of the fact, though, that in terms of getting parole, that that was not a guarantee? There was no sort of right or entitlement to that? And so you can argue that perhaps it's likely that he would have been granted this and been for release at the 50 percent mark or what have you, but this is not— Perhaps he would, and perhaps he wouldn't. And so the notion that by what the federal judge did, did in fact increase his sentence is not—I don't know that we can actually say that, can we? And so, Your Honor, two responses. One is, absolutely, the government argues, and it is correct, that at the time of imposition of the sentence, there was no certainty as to whether Mr. Batiste would end up being actually eligible for release. There never is certainty. You know, he may not do his programming or whatever it may end up being. So at that juncture, there was no certainty. But the easy answer is in the sentencing context, when we're trying to determine and the district court's trying to determine how to sentence someone, there are never certainties. I mean, the whole task of administrating justice in the context of sentencing never has certainties. We know that, and there are probably better examples, but you base things on findings of fact by preponderance of the evidence. That's not a certainty. You try to gauge an individual's rehabilitation prospects, never a certainty. So absolutely, it wasn't a certainty, but the state of the record was, as presented and not contravened by the government, that this is what happens in the state of Connecticut. And so I've tried to figure out what the proper standard is. And obviously, on an individual case, you don't need to articulate necessarily the big, broad standards. But is it more likely than not, which is what we use for findings of fact in the context of sentencing? So I think it's accurate to say there are no certainties in the sentencing world. The second and more particular response in this context, Your Honor, is that we now have the opportunity to determine certainty. And that's because, as the government concedes again to its credit, this case is going to have to get remanded anyway in terms of going ahead and determining what's happening with two conditions of supervised release, which don't seem to make any sense in this case. And right now, Mr. Batista has served over his seven years. He was arrested in April of 2014, seven years, April of 2021. He's now, we're in February of 2022. He's actually served more than the 10 months that a 10-month consecutive sentence would have fit in. And so if it's remanded, and at that juncture, Connecticut DEOC can issue a letter saying, this guy's eligible for release, but for the federal detainer. And the judge may well look at that and say, OK, he's done his extra 10 months, 11 months, 12 months, however long it takes to get back in front of the district court judge and be able to assess whether there's actually real time and be able to assess whether it's a certainty. So that certainly doesn't apply in every case. But we're trying to do justice in this case. And that would allow us to figure out whether it was a certainty, since it has to go back to him anyway. In terms of real world effect, I mean, it's very easy to say 10 months is within the guideline range. The guidelines say it should be consecutive, end of story. It's just easy to say that. I'm imploring the court to go ahead and take into consideration what the real world impact is. 3553A, all of that is designed to go ahead and try to assess real world impact. It's no longer just pure math. I know it gets complicated. And there certainly are going to be situations where it's just going to be too difficult to figure out what is the impact of this really going to be? What will a federal detainer do? But again, in this case, thankfully, we can figure that out by go ahead and remanding. Sorry, a little hard to breathe sometimes. I've got a new high quality mask they gave me downstairs. So, Your Honor, those are the positions. And if there are no further questions, I will await rebuttal. Thank you. Good morning, and may it please the court. Connor Reardon for the United States, the appellee in this case. This appeal presents two questions. The parties largely agree on the second. So I'll focus on the first. Mr. Batiste appeared for sentencing in this case, having violated the terms of his supervised release by repeatedly sexually assaulting an 11-year-old girl. There's no dispute that his sentencing hearing was procedurally proper in every respect. There's also no dispute that the district court's 10-month sentence was within the advisory revocation range, and that the district court's decision to run that sentence consecutively to Mr. Batiste's state sentences, comported with the Sentencing Commission policy statement calling for exactly that result. In challenging his sentence for substantive reasonableness, Mr. Batiste is asking this court to hold that the only possible permissible result in this case was for the district court to disregard the policy statement and impose a concurrent sentence in order to generate his desired result under Connecticut's parole rules. This court should decline that invitation. Well, I don't know that he's arguing that the only reasonable result is to disregard that. I think the question is, looking at what the reality is of his state sentence and what it means in terms of how much time Mr. Batiste will ultimately serve, that in fact, this is not just a month, a 10-month sentence, that this is actually more than that. And so in looking at all the factors at play, is it in fact reasonable, given that the sort of the quirk of what this will mean in reality? Right, so that's certainly his argument, Your Honor. I do understand him to be arguing, however, that this is the only possible permissible result because this isn't a procedural challenge. He's not asking that the court be, that the case be sent back to Judge Bolden so that the court can think about this issue from another angle or something like that. He's asking that this go back so that, and I believe that this is what he asks for at 11 in his brief, so that the district court can be directed to impose concurrent time, any consecutive time being, in his view, substantively unreasonable. Now, his argument in this regard depends on his attempt to attribute responsibility for this portion of his state sentence to the federal district court. He claims throughout his brief that the district court effectively sentenced him to 69 months, that being 10 months the court actually imposed and 59 months, which is the delta between 50% and 85% of his state sentence. But in the government's view, that's not the right way to think about it. Put simply, that chunk of time can't be attributed to the district court's sentence because nothing in that sentence authorizes Mr. Batiste's confinement for that period of time. Indeed, nothing in the district court's sentence authorizes his confinement for even a day longer than the 10 months that the district court actually imposed. Mr. Batiste will be incarcerated for those 59 months on the authority of the state of Connecticut, not of any other sovereign. To put that in the terms of the due process cases like Greenholz, which we cite at 28 and 29 of our brief, Mr. Batiste's state conviction and sentence were sufficient to extinguish his liberty right as to that 59-month period. The mere possibility of obtaining parole is not enough to rekindle that right, as this court and the Supreme Court have repeatedly held. So the deprivation of liberty that he's pointing to, the deprivation of liberty for that 59-month period, simply can't be the work of the federal sentence. Put otherwise, the district court did not sentence Mr. Batiste to 69 months in prison, not actually... The district court had considered this factor when raised and thought, you know, I'm persuaded the Senate should not be consecutive because of the interaction with Connecticut law. Would that have been substantively unreasonable? Your Honor, in the government's view, a sentence of that kind would not have properly reflected the federal interests at play. Chapter 7 of the sentencing guidelines recommends that a sentence in these circumstances be consecutive in order to vindicate the uniquely federal interest in addressing the defendant's breach of trust with the court by violating the terms of his supervised release. So certainly, the government vigorously urged a consecutive sentence. Now, as for whether that would have resulted in a sentence that was substantively unreasonable that the government would have asked this court to correct, you know, I'm not sure I would be standing here on appeal if the district court had done so. But to address one point Your Honor made at the outset of the question, I think it is important to recognize, and I said this at the outset of my remarks, that the district court did properly consider every factor that was put before it in this case. Both of the parties addressed the effect that a federal sentence was likely to have on a state sentence. 23, 42, and 49 of the defendant's appendix, those issues are put before the district court. At 51 in the defendant's appendix, the district court makes clear that it has considered all of the information that it's learned about the defendant, both good and bad. And at 54 and 55 in the defendant's appendix, the district court not only explains that it's going to impose a consecutive sentence in accordance with the policy statement, it expressly acknowledges the fact that the defendant has urged a concurrent sentence at every step in the proceedings. And of course, the leading ground on which the defendant did so was that a consecutive sentence was likely to have this effect on his state parole chances. And so that's all a long-winded way of saying that this is a sentence that was procedurally proper across the board. Now, Mr. Battease, in his brief, toward the close of his argument, says, look, I anticipate that the government's going to argue that I only got a 10-month sentence. And sure enough, we're here doing that, in fact. But then he says, that just brings us to the crux of the appeal. And here's how he describes the crux of the appeal in his view. And I'm quoting from his brief at 11. Can and should the district court consider the real-world impact of the federal revocation sentence on the underlying state sentence? Sure, the district court should. That's a pertinent fact about the world that the district court ought to think about as a procedural matter. But here, the district court did so. After the district court does that, after the district court imposes a procedurally reasonable sentence, it triggers the significant deference that applies when this court reviews a procedurally proper sentence for substantive reasonableness alone. Under that standard, the sentence below stands unless it was so shockingly high or otherwise unsupportable as a matter of law that permitting it to stand would damage the administration of justice. This commission-endorsed sentence that was imposed at the culmination of a procedurally proper sentencing hearing does not answer to that description. I'm happy to answer any further questions but otherwise, we'll rest on the brief and ask the court to affirm on question one and order a limited remand on question two. Thank you. Thank you, your honors. Just briefly, we are not asking the court to direct the district court to do anything. What we're asking the court to do is to send it back to the district court to assess whether now that we're no longer dealing with speculation but we now know with certainty whether he's been held there for 10, 11, 12 extra months because of the existence of the federal detainer due to the consecutive sentence, whether that's sufficient to go ahead and serve the 3553A factors. So we're not asking for direction. We're asking for reconsideration on the remand. It reflects the disconnect between the law and reality maybe to hear the government argue that this chunk of time, this extra 58 months is not attributable to the federal court's sentence. It is attributable to the federal court's sentence if the detainer is what's keeping him in for 58 months. I understand there's an underlying federal sentence but as represented from experienced state counsel, the expectation in the state court was you do half your time. You'll be eligible for release. If you do what you're supposed to do, you'll be out. And so the 58 extra months actually is a direct result of the consecutive decision by the federal district court. Whether it's a day, whether it's 10 months, it's the detainer that does it. And finally, we're not making some big due process argument that isn't what we're doing. We're just asking for individual justice for Mr. Batiste. Justice overstated, sorry, but the correct sentence for him in light of what we now know and can know. Thank you. Thank you both. We'll take the matter under advisement.